BURSOR & FISHER
P.A.

1330 Avenue of the Americas
32nd Floor
New York, NY 10019
www.bursor.com

YITZCHAK KOPEL
Tel: 646.837.7127
Fax: 212.989.9163
ykopel@bursor.com

October 15, 2024

***Via ECF***
Hon. Orelia E. Merchant
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

***Re:*** ***Palma v. Formula One Digital Media Ltd.*****, Case No. 1:24-cv-05283-OEM-PK**
**Plaintiff's Response to Defendant's Pre-Motion Letter**

Dear Judge Merchant,

I represent Plaintiff Esteban Palma ("Plaintiff") in the above matter. Pursuant to Rule III.B.2 of Your Honor's Individual Rules, I write to respond to Defendant Formula One Digital Media Limited's ("Defendant") Letter Requesting a Pre-Motion Conference (ECF No. 9) (the "Letter" or "Ltr."). In the Letter, Defendant does not contest *a single element* of Plaintiff's VPPA claim, nor can it. As the Complaint laboriously lays out, Defendant is a "video tape service provider" that offers a paid subscription plan to watch pre-recorded videos. Compl. ¶¶ 10-12 (ECF No. 1). But when paid subscribers like Plaintiff and Class Members (Defendant's "consumers") watch a pre-recorded video on Defendant's website f1tv.formula1.com (the "Website"), Defendant discloses their e-mail addresses and the titles of videos they viewed to Salesforce and makes similar disclosures to Meta (Plaintiff's and Class Members' "personally identifying information"). *See, e.g.*, *id.* ¶¶ 27-28, 33, 42, 46. These disclosures are made knowingly, without consent, and for marketing, advertising, and data analytics purposes (*i.e.*, outside the ordinary course of business). *See, e.g.*, *id.* ¶¶ 51, 56, 58-59, 61-67, 70, 91.[1] Defendant's VPPA violation is therefore clear as day. So, without a leg to stand on factually, Defendant anticipates moving to dismiss on two procedural grounds. As Plaintiff lays out, these arguments are without merit.

*First*, Defendant contends "Plaintiff's Complaint should be dismissed … for the independent reason that he lacks Article III standing." Ltr. at 3. Defendant is unable to cite *a single case* where a VPPA claim was dismissed for lack of Article III standing. Nor can it. Just today, the Second Circuit had "no trouble holding" that an individual who alleges their "personally identifiable information was exposed to an unauthorized third party" in violation of

[1] During meet-and-confers between counsel, Defendant's counsel never contended that Defendant procured Plaintiff's consent "in a form distinct and separate from any form setting forth other legal and financial obligations," which is what the VPPA requires. 18 U.S.C. § 2710(b)(2)(B)(i); *see also, e.g.*, *Cappello v. Walmart Inc.*, 2019 WL 11687705, at *2 (N.D. Cal. Apr. 5, 2019) "[T]he plain language of the VPPA does indeed require video tape service providers to (1) request consumers' consent to a privacy disclosure that addresses only the use of personally identifiable information connected with video purchases and no other privacy topic, and (2) obtain the act of consent separately from the consumer's agreement to the retailer's … general privacy policy."). Defendant's failure to raise that argument here shows that Plaintiff's allegations are correct and there was no consent for purposes of the VPPA.

the VPPA has plead "a concrete injury sufficient to confer Article III standing." *Salazar v. National Basketball Association*, Case No. 23-1147 at 18, 22 (2d Cir. Oct. 15, 2024) (internal quotations omitted and emphasis in original). The Second Circuit reasoned that an individual in such a case suffers concrete harm akin to "the harm flowing from the public disclosure of private facts common-law analog" because the defendant discloses individual's information to and "deliberately uses" a third party for "commercial purposes, not the [defendant's] or the user's purposes." *Id.* at 18, 21-22. Every other circuit court is in agreement. *See*, *e.g.*, *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983-84 (9th Cir. 2017) ("[T]he VPPA identifies a substantive right to privacy that suffers any time a video service provider discloses otherwise private information … We therefore join the [Third and Eleventh] [C]ircuits that … have found Article III standing in similar cases arising under the VPPA."); *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014) ("By alleging that Redbox disclosed their personal information in violation of the VPPA, Sterk and Chung have met their burden of demonstrating that they suffered an injury in fact that success in this suit would redress."); *see also Yershov v. Gannett Satellite Info. Network, Inc.*, 204 F. Supp. 3d 353, 362 (D. Mass. 2016) ("[T]he VPPA plainly provides plaintiffs like Yershov, who allege wrongful disclosure of their PII, with standing and a right to relief.") (cleaned up).

In addition, it should not be lost on the Court that Defendant removed the *Gutierrez* Action to federal court in Illinois. Ltr. at 1. Presumably, therefore, Defendant believed the plaintiff had suffered an injury sufficient for Article III standing vis-à-vis that plaintiff's VPPA claim. Otherwise, what basis would Defendant have to remove the action? *Pires v. Heller*, 2004 WL 2711075, at *3 (S.D.N.Y. Nov. 24, 2004) ("[I]t is *Defendants'* burden to establish the existence of federal subject matter jurisdiction upon removal, not the Plaintiff.") (emphasis in original). Yet here, Defendant is contesting subject matter jurisdiction in a case it contends "allege[s] substantially similar facts, assert[s] identical causes of action, and seek[s] the same remedies." Ltr. at 2. So either Defendant's removal of the *Guitierrez* case was improper or Defendant's arguments here are baseless. Defendant cannot "have it both ways." *Mocek v. Allsaints USA Ltd.*, 220 F. Supp. 3d 910, 914 (N.D. Ill. 2016).

*Second*, Defendant incorrectly contends that "dismissal is appropriate pursuant to the first-filed rule because an earlier-filed case, the *Gutierrez* Action, already encompasses Plaintiff's claims." Ltr. at 2. But Defendant has this backwards. The *Gutierrez* Action only alleges facts concerning the Meta Pixel. *See, e.g.*, Ltr. Ex. A ¶¶ 23-26, 58. Accordingly, while Gutierrez purports to represent a broader class (*id.* ¶ 43), it is likely his claims would be limited to only Facebook users. By contrast, Plaintiff's Complaint includes allegations involving Salesforce that apply to *all users*, regardless of whether they have a Facebook account. Thus, Mr. Gutierrez is a member of Plaintiff's Class, but the opposite is not necessarily true. In any event, courts have held that the "first-filed rule is not to be applied mechanically." *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 54 (S.D.N.Y. 2001). In New York, "[t]here are two exceptions to the first-filed rule: (1) where special circumstances warrant giving priority to the second suit, and (2) where the balance of convenience favors the second-filed action." *New v. JPMorgan Chase Bank, N.A.*, 2024 WL 4228058, at *3 (S.D.N.Y. Sept. 18, 2024). Here, application of the first-filed rule is not warranted. *First*, Defendant's request stumbles because "[t]he court in which the first-filed case was brought decides whether the first-filed rule or an exception to the first-filed rule applies." *Reliance Ins. Co.*, 155 F. Supp. 2d at 54 n.2; *see also Silver Line Bldg. Prods. LLC v. J-Channel Industries Corp.*, 12 F. Supp. 3d 320, 329 (E.D.N.Y.

2014). Here, Defendant requested relief from the *second filed* court. This automatically warrants denial.

*Second*, "the balance of convenience" favors Plaintiff's action. As one court in this Circuit has noted, "[t]he court should take whichever action it deems proper to avoid duplication of judicial effort, void vexatious litigation in multiple forums, achieve comprehensive disposition of litigation among parties over related issues, and eliminate the risk of inconsistent adjudication." *New*, 2024 WL 4228058, at *4. Here, as noted above, Plaintiff's claims encompass the *Guitierrez* Action, not the other way around. Plaintiff's claims involve more third parties (Salesforce and Meta), more extensive pre-suit testing and disclosures, and will sweep in all Website users versus just Website users with a Facebook. The third party issue is critical, as a dismissal of the *Gutierrez* Action—which again, only concerns Meta—will not doom Plaintiff's case due to Plaintiff's allegations concerning Defendant's disclosures to Salesforce. *See, e.g.*, Compl. ¶¶ 27-32, 46-48, 56-63. Thus, Plaintiff's action will provide Defendant with the most "comprehensive disposition" of whether Defendant violated the VPPA, not the *Gutierrez* Action. *See IRX Therapeutics, Inc. v. Landry*, 150 A.D.3d 446, 446 (1st Dep't 2017) (declining to apply first-filed rule where second-filed "Texas action is [] more comprehensive than [first-filed] declaratory judgment action"). Further, "chronology is not dispositive, particularly since both actions are at the earliest stages of litigation." *IRX Therapeutics, Inc.*, 150 A.D.3d at 446.

*Finally*, if the Court is to apply the first-filed rule (and it should not), transfer and consolidation of the two actions is preferable to dismissal. *United States v. Organon USA, Inc.*, 2013 WL 12142351, at *6 (S.D. Tex. Feb. 1, 2013) ("[I]f a court finds the issues in two cases substantially overlap, it should transfer the case to the district in which the claim was first filed to decide whether the second filed suit must be dismissed, stayed, transferred or consolidated."). This is especially true where, as here, Plaintiff's counsel offered this as a possibility to Defendant's counsel. Defendant need only consent to personal jurisdiction over Plaintiff's claims in Illinois.

Respectfully submitted,

Y. Kopel

Yitzchak Kopel

CC: All Counsel of Record (Via ECF)